1
2
3
4
5
6           UNITED STATES DISTRICT COURT
7                DISTRICT OF NEVADA
8                    * * * * *
9   SENECA INSURANCE COMPANY, INC.,     )
                                        )   3:14-cv-00381-LRH-WGC
10               Plaintiff,             )
                                        )
11  v.                                  )   ORDER
                                        )
12  STRANGE LAND, INC. and U.S. BANK,   )
    NATIONAL ASSOCIATION; and DOES 1    )
13  through 10, inclusive,              )
                                        )
14               Defendants.            )
                                        )
15  _____ )

16         There are five motions currently pending before the Court.  First, Defendant Strange

17  Land, Inc. ("Strange Land") filed a Motion to Dismiss Plaintiff Seneca Insurance Company,

18  Inc.'s ("Seneca") Amended Complaint.  Doc. #46.[1]  Seneca filed an Opposition (Doc. #50), to

19  which Strange Land replied (Doc. #52).  Second, Strange Land requests that the Court stay this

20  action pending resolution of a similar action filed in Nevada state court.  Doc. #54.  Seneca filed

21  an Opposition (Doc. #60), to which Strange Land replied (Doc. #62).  Third, Defendant U.S.

22  Bank, National Association ("U.S. Bank") filed a Motion to Strike Seneca's Third Party

23  Complaint for Interpleader and Declaratory Relief.  Doc. #59.  Seneca filed an Opposition (Doc.

24  #64), to which U.S. Bank replied (Doc. #67).  Fourth, Seneca filed a Cross-Motion for Sanctions

25  against Strange Land.  Doc. #61.  Strange Land filed an Opposition (Doc. #65), to which Seneca

26  replied (Doc. #68).  Fifth, Third Party Defendant Belfor USA Group, Inc. ("Belfor") filed a

27  Motion to Strike Seneca's Third Party Complaint.  Doc. #63.  Seneca filed an Opposition (Doc.

28  #69), to which Belfor replied (Doc. #70).

_____

        [1] Refers to the Court's docket entry number.

**I.    Facts and Procedural Background**

Strange Land is the owner of a building located at 210 North Sierra Street in Reno, Nevada ("the premises"). Doc. #45 ¶¶8-9.  In early 2013, Seneca issued a Commercial Property Insurance Policy ("the Policy") to Strange Land for the premises, to be effective February 28, 2013, to February 28, 2014.  *Id.* ¶8.  The Policy covered all risk of loss to property at the premises, subject to terms and conditions, and set a limit of coverage at $2 million.  *Id.* ¶9.  U.S. Bank holds a mortgage on the premises and Seneca states that the bank is listed as a loss payee on the Policy.  *Id.* ¶10.

During the Policy period, Strange Land made four claims for damage under the Policy: (1) on May 4, 2013, Strange Land notified Seneca that a back-up of a sewer/drain caused damage to a bathroom fixture; (2) on November 11, 2013, Strange Land notified Seneca that a rupture in a water feed pipe connected to a boiler caused water damage to the premises in excess of $1 million; (3) on December 11, 2013, Strange Land notified Seneca that some of the building's plumbing lines ruptured, causing water flow and damage to the premises; (4) on February 25, 2014, Strange Land notified Seneca of damages caused by vandalism in the form of scratches or etching on the ground floor exterior doors and windows.  *Id.* ¶¶11-14.  After investigating the claims, Seneca disclaimed coverage for the losses on July 18, 2014, and rescinded the Policy due to material misrepresentation and fraud by Strange Land in its application for the Policy, and after Seneca granted the Policy.  *Id.* ¶15.

Specifically, Seneca alleges that while Seneca was investigating the Policy application, Strange Land did not reveal that another insurer had cancelled a previous insurance policy for the premises.  *Id.* ¶17.  Seneca states that this misrepresentation was made with the intent of defrauding Seneca, and that it would not have issued the Policy if it had knowledge of this information.  *Id.* ¶¶21-25, 28.  Additionally, when Strange Land failed to timely respond to the underwriting recommendations and requirements, Seneca issued a cancellation of the policy—effective July 10, 2013.  *Id.* ¶39.  After receiving notice of the cancellation, Strange Land returned the requested questionnaire to Seneca, representing that the kitchen and safety equipment had been reviewed and approved.  *Id.*  In reliance on Strange Land's representations,

1  Seneca reinstated the Policy on June 12, 2013. *Id.* ¶40.  Seneca alleges that it learned from its

2  subsequent investigations that the representations made by Strange Land to reinstate the policy

3  were false, and that Seneca would not have reinstated the Policy in the absence of the false

4  representations. *Id.* ¶¶42-43.

5  The Complaint, originally filed on July 21, 2014, alleges five causes of action against

6  Defendants: (1) rescission based on fraud prior to issuance of the policy; (2) rescission based on

7  fraud after the policy was issued; (3) breach of insurance contract and declaratory judgment; (4)

8  for declaratory judgment; and (5) breach of contract and declaratory judgment.  On October 2,

9  2014, Belfor filed suit against Strange Land, U.S. Bank, Seneca, and other defendants in Nevada

10  state court, claiming that Belfor should have been paid for work performed on the premises, and

11  that it should have a priority lien on the premises.  On December 22, 2014, the Court granted

12  Seneca's Motion to Amend its Complaint as to claims against Strange Land.  Doc. #44.  Strange

13  Land filed its Motion to Dismiss the Amended Complaint on January 7, 2015.  Doc. #47.  On

14  February 13, 2015, Seneca filed a Third Party Complaint for Interpleader and Declaratory Relief

15  against Belfor with this Court.  Doc. #53.  Strange Land filed a Motion for Abstention based on

16  the pending state court action on February 18, 2015, arguing that the Court should stay this action

17  in light of the similar Nevada state court action.  Doc. #54.

18  **II.    Legal Standard**

19  The Supreme Court has determined that under exceptional circumstances, a federal

20  district court may decline to exercise or postpone the exercise of its jurisdiction when there are

21  concurrent state and federal suits, and when doing so would promote wise and sound judicial

22  administration, including the conservation of judicial resources and the avoidance of piecemeal

23  litigation. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

24  This type of abstention from the exercise of federal jurisdiction for reasons of judicial economy

25  should be "an extraordinary and narrow exception to the duty of a District Court to adjudicate a

26  controversy before it." *Id.* at 813; *see also Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir.

27  1989).

28  In order for the court to abstain from exercising jurisdiction under *Colorado River*, there

1   must be a parallel or substantially similar proceeding in state court. *Sec. Farms v. Int'l Broth. of*

2   *Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1009 (9th Cir. 1997)

3   ("[I]nherent in the concept of abstention is the presence of a pendent state action in favor of

4   which the federal court must, or may, abstain."). "Suits are parallel if substantially the same

5   parties litigate substantially the same issues in different forums." *New Beckley Min. Corp. v.*

6   *Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991).

7        The Supreme Court and the Ninth Circuit have identified a nonexclusive list of relevant

8   factors for determining whether exceptional circumstances exist to justify invoking *Colorado*

9   *River* abstention. *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 15-16

10   (9th Cir. 1983). These factors include: (1) whether either court has assumed jurisdiction over a

11   res, or property at issue; (2) the relative convenience of the forums; (3) the desirability of

12   avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5)

13   whether state or federal law controls; and (6) whether the state proceeding is adequate to protect

14   the parties' rights. *See Colorado River*, 424 U.S. at 818; *Moses H. Cone*, 460 U.S. at 25-26.

15   "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process

16   rather than as a mechanical checklist." *Am. Int'l Underwriters, Inc. v. Cont'l Ins. Co.*, 843 F.2d

17   1253, 1257 (9th Cir. 1988).

18   **III.   Discussion**

19        Strange Land argues that abstention is proper because abstention would preserve judicial

20   resources, and the majority of the *Colorado River* factors weigh in favor of abstention. Seneca

21   argues that this case does not present the exceptional circumstances that warrant abstention. The

22   Court has carefully examined the *Colorado River* factors in relation to the circumstances of this

23   case and finds that this case should be stayed for the sake of wise judicial administration.

24        As an initial matter, the parties concede that the Nevada state action is substantially

25   similar to the present federal action because each lawsuit relates to the same property and

26   insurance dispute. Doc. #54 at 4; Doc. #61 at 6; *see New Beckley Min. Corp.*, 946 F.2d at 1073.

27   The Court agrees. Further, the majority of remaining *Colorado River* factors also weigh in favor

28   of abstention.

### A.     Jurisdiction over a *Res*

The first factor, whether a court has asserted jurisdiction over property related to the actions, is neutral because neither court has asserted such jurisdiction. *See Commercial Cas. Ins. Co. v. Swarts, Manning & Assocs., Inc.*, 616 F. Supp. 2d 1027, 1035 (D. Nev. 2007) (finding that the first factor was neutral because there was "no property in dispute that is the sort of tangible physical property referred to in *Colorado River*") (citing *Am. Int'l Underwriters*, 843 F.2d at 1258).

### B.     Relative Convenience of the Forums

The second factor, relative convenience of the forums, "is largely irrelevant because both forums are located in Nevada and should be equally convenient." *Id.* All of the events that gave rise to these disputes occurred in Nevada, the insurance policy was issued in Nevada to a Nevada entity, and the premises are located in Nevada. Thus, this factor does not weigh in favor of, or against, abstention.[2]

### C.     Desirability of Avoiding Piecemeal Litigation

The third factor, advising against piecemeal litigation, weighs in favor of abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters*, 843 F.2d at 1258. In *Swarts*, this Court abstained in a "rather complex multi-part dispute with numerous claims, counterclaims, cross-claims among all parties and numerous legal issues" because it was "precisely the type of exceptional case where, in the interests of judicial economy, a federal district court may decline to exercise or postpone the exercise of its jurisdiction." 616 F. Supp. 2d at 1035. Similarly, this case involves multiple defendants, numerous claims, and cross-claims, that all present complex state tort and insurance issues. The third *Colorado River* factor therefore weighs in favor of abstention.

### D.     Order in which the Forums Obtained Jurisdiction

The fourth factor involves the order in which the forums obtained jurisdiction. Here, there is no doubt that Seneca filed this action before Belfor filed its complaint in Nevada state

---

[2] The parties agree that this factor is neutral. Doc. #54 at 6; Doc. #60 at 8.

1   court.  The Supreme Court has cautioned, however, that this factor must "be applied in a

2   pragmatic, flexible manner with a view to the realities of the case at hand."  *Moses H. Cone*

3   *Mem'l Hosp.*, 460 U.S. at 21.  "Thus, priority should not be measured exclusively by which

4   complaint was filed first, but rather in terms of how much progress has been made in the two

5   actions."  *Id.*  Strange Land argues that the state action has progressed further because the parties

6   have filed answers, while no parties have yet answered Seneca's complaint in the federal action.[3]

7   Seneca argues that in addition to being first filed, the federal action has progressed further

8   because a court conference has occurred and the parties have initiated Rule 26 discovery.

9   Because neither case has progressed significantly further than the other, and the federal action

10  was filed more than two months prior to the state action, this factor weighs against abstention.

11  ### E.      Whether State or Federal Law Controls

12          The fifth factor, whether state or federal law controls, weighs heavily in favor of

13  abstention.  All claims in this case are brought pursuant to state law.  As in *Swarts*, "[t]he state

14  court is in a better position to resolve issues involving Nevada law and this court's federal law

15  expertise is not needed to resolve this dispute."  616 F. Supp. 2d at 1036.  The Court notes that

16  "the existence of routine issues of state law does not outweigh a federal court's 'virtually

17  unflagging obligation . . . to exercise the jurisdiction given them.'"  *Am. States Ins. Co.*, 2013

18  WL 1249591, at *3.  However, based on the complex legal issues presented here, "it would be a

19  misuse of judicial resources to occupy" this Court "in a duplicative proceeding when it is clear

20  that the state court is well-prepared to proceed."  *Swarts*, 616 F. Supp. 2d at 1036.

21  ### F.      Whether the State Proceeding is Adequate to Protect the Parties' Rights

22          The sixth factor asks whether the "parallel state-court litigation will be an adequate

23  vehicle for the complete and prompt resolution of the issues between the parties."  *Moses H.*

24  *Cone Mem'l Hosp.*, 460 U.S. at 28.  Seneca argues that the state action is not an adequate vehicle

25  for prompt resolution because "while the federal court action fully encompasses the issues in the

26  state court action, the state court action does not fully encompass the federal court action."  Doc.

27

28          [3] Seneca contests this method for assessing progress, noting that there are no answers in the
    federal action only because Strange Land has decided to file successive motions to dismiss rather than
    answering the Complaint.

#61 at 13.  Conversely, Strange Land argues that "[n]ot all of the issues can be resolved in this Court, but all issues can be resolved in State Court."  Doc. #62 at 10.  Seneca adds that because Belfor—the plaintiff in the state court action—is not a named party in this action, the state court action "cannot adequately protect the rights of Seneca to fully litigate its rights and obligations under the policy issued to Strange Land."  *Id.*

Belfor's amended state court complaint against all defendants, filed on November 25, 2014, requests payment for work it performed on the premises, and a priority lien on the premises.  Doc. #61, Ex. 1.  Seneca filed its state court answer, counterclaims, and cross-claims against all defendants on December 15, 2014.  *See* Doc. #54, Ex. 2.  On February 13, 2015, Seneca voluntarily filed a Third Party Complaint in this action, seeking declarations that Seneca is entitled to rescission of the insurance policy—which would preclude Belfor's causes of action against Seneca—and that policy exclusions and conditions apply that would further insulate Seneca from liability.  Doc. #53 ¶¶40, 52, 61, 67, 75.  On February 17, 2015, Seneca filed a Motion to Dismiss Belfor's state court complaint and Strange Land's third-party complaint in the state action, and requested that the state court stay the action until this Court resolved the pending motions.  Doc. #61, Ex. 2.  On February 26, 2015, Strange Land moved to dismiss Seneca's cross-claims against Strange Land in the state court action.  Doc. #61, Ex. 3.

This complicated history reveals the state and federal actions both involve claims, cross-claims, and counter-claims involving all parties relevant to this action.  However, while Seneca has filed a Third-Party Complaint against Belfor in the federal action,[4] Belfor has only asserted its claims for payment for work performed on the premises, and request for a priority lien, in the state action.[5]  Accordingly, although both forums are likely to adequately protect the rights of the parties, the state court action is most likely to promote "complete and prompt resolution of the issues between the parties."  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28.  Moreover, Seneca

---

[4] U.S. Bank and Belfor have each moved the Court to strike this Motion.  Doc. #59; Doc. #63.

[5] Belfor filed a Motion to Strike or Dismiss Seneca's Third Party Complaint (Doc. #63), and a Certificate of Interested Parties on March 25, 2015 (Doc. #66), but these motions are not equivalent to Belfor fully asserting its rights in the federal action.

1    simply has not raised any reasons why the state court action would not protect its rights.  *See R.R.*

2    *Street & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 981 (9th Cir. 2011) (finding that state court is

3    adequate to protect the rights of the parties when there was "no question that the state court has

4    authority to address the rights and remedies at issue"); *see also Holder v. Holder*, 305 F.3d 854,

5    869 n.5 (9th Cir. 2002) (noting that state court would not protect plaintiff's rights because it

6    lacked jurisdiction over plaintiff's legal issue).  This factor therefore weighs in favor of

7    abstention.

8         **G.    Other Relevant Factors**

9         The seventh "unofficial" factor asks whether either action represents a party's attempt to

10   engage in forum shopping.  "To avoid forum shopping, courts may consider 'the vexatious or

11   reactive nature of either the federal or the state litigation.'"  *R.R. Street & Co*, 656 F.3d at 981

12   (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 17 n.20).  Here, Belfor, which was not a party

13   to Seneca's federal action, filed his complaint in state court.  Thereafter, Seneca voluntarily filed

14   counterclaims and cross-claims against all defendants in the state action and a Third Party

15   Complaint against Belfor in this action, which were largely similar to Seneca's federal Complaint

16   and state answer, respectively.[6]  As a result, the court finds that Belfor's action was not the result

17   of vexatious or reactive forum shopping.  This factor is therefore neutral.

18        For the foregoing reasons, the court finds that this case presents the type of exceptional

19   circumstances that warrant abstention for the sake of wise judicial administration.   Seneca

20   requests that the Court sanction Strange Land for acting in bad faith to delay and disrupt this

21   litigation.  Doc. #61 at 15.  However, given that the Court granted Strange Land's first motion to

22   dismiss, and now grants Strange Land's motion for abstention, Strange Land's actions pursuant

23

24        [6] Strange Land states that "Paragraphs 112-120, 123, 124, 126-141, 143-155 and 158 of the
     Counter Complaint [Doc. #54, Ex. 2], and Paragraphs 17-18, 21-28, and 30-63 in the Amended

25   Complaint in this action [Doc. #45] are either identical, or virtually identical to their counterparts."  Doc.
     #54 at 4 n.2.  "Furthermore, Paragraphs 112-120, 123-124, 127-130, 133-141, 144-145, 147-152, 154-

26   158, 160-161 and 165-166 in Seneca's 'first amended answer' in the State Court action [Doc. #54, Ex. 1]
     are either identical, or virtually identical to paragraphs 24-25, 28-35, 37-39, and 41-75, which are their

27   counterparts in the 'Third Party Complaint for Interpleader and Declaratory Relief' in this action. [Doc.
     #53]."  *Id.*  The Court has reviewed these paragraphs, and finds that they are, in fact, identical or virtually

28   identical.

to the Federal Rules of Civil Procedure and Supreme Court precedent do not warrant sanctions.

Because abstention is proper in this case, the Court denies the remaining pending motions without prejudice—Strange Land's Motion to Dismiss (Doc. #46), U.S. Bank's Motion to Strike (Doc. #59), and Belfor's Motion to Strike (Doc. #63)—to renew once the Nevada state court resolves all issues related to this case. *See Breck v. Doyle*, No. 3:12-cv-0649, 2014 WL 4810301, at *7 (D. Nev. Sept. 26, 2014) (denying pending motions without prejudice after granting motion for abstention under the *Younger* doctrine).

**IV.    Conclusion**

IT IS THEREFORE ORDERED that Strange Land's Request for Abstention (Doc. #54) is GRANTED.  This action is STAYED pending resolution of the Nevada state court action. Strange Land shall, within fourteen (14) days of resolution of that action, file a notice of resolution of the Nevada state court action, and a motion to lift the stay with the Court.

IT IS FURTHER ORDERED that Seneca's Cross-Motion for Sanctions against Strange Land (Doc. #61) is DENIED.

IT IS FURTHER ORDERED that Strange Land's Motion to Dismiss (Doc. #46) is DENIED without prejudice to renew following the Court's order lifting its stay.

IT IS FURTHER ORDERED that U.S. Bank's Motion to Strike (Doc. #59) is DENIED without prejudice to renew following the Court's order lifting its stay.

IT IS FURTHER ORDERED that Belfor's Motion to Strike (Doc. #63) is DENIED without prejudice to renew following the Court's order lifting its stay.

IT IS SO ORDERED.

DATED this 21st day of April, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE